(No. 3929 ▮▮▮▮▮▮)

ADA MCNUTT, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 24, 1947.*

*Petition of Claimant for Rehearing denied September 18, 1947.*

WAYNE O. SHUEY, for claimant.

GEORGE F. BARRETT, Attorney General, and C. ARTHUR NEBEL, Assistant Attorney General, for respondent.

BERGSTROM, J.

The complaint, which was filed on September 4, 1945, alleges that claimant was employed by the Department of Public Welfare of the State of Illinois in the capacity of attendant at the Jacksonville State Hospital, Jacksonville, Illinois, for the period from February 5, 1935 through the month of April 1944; that in April 1944 claimant was forced to discontinue her employment by reason of the disease of tuberculosis which claimant alleges arose out of, during the course of, and by reason of her employment by respondent. Claimant claims compensation under the Occupational Disease Act of the State of Illinois.

The record shows that claimant was given a physical examination at the time she was employed in 1935, which she satisfactorily passed; that during her employment as an attendant she worked alternately in and out of those

wards handling tuberculosis patients, and that during the period of her employment she spent about two years in tuberculosis wards. Her duties consisted of supervision of wards and meals, making beds, giving medicine, taking temperatures, giving baths, and serving food.

Her tubercular condition was first discovered in November, 1941. She was examined again in 1942 and in April, 1944. Claimant continued with her work until her April, 1944 examination, when she was told by Dr. Nady, who was employed by respondent, that the old cavity had reopened again. She was put to bed and remained there in her home for a period of seven months, until November, 1944. She then went to a hospital in Ottawa, Illinois where they collapsed a lung. She was given a number of X-ray examinations and received treatment by doctors on the hospital staff of Jacksonville State Hospital. By stipulation, the following report made by Dr. R. H. Rundy, Dr. G. H. Vernon and Dr. Andrew Nady, the Advisory Committee on Tuberculosis Control to the Department of Public Welfare, with respect to the case of claimant, was admitted into evidence:

"Based upon the facts that this employee entered the employment of the Jacksonville State Hospital on February 5, 1935, and though there is no report of a medical examination made at the time of her entrance into the service, it is presumed that she was medically qualified for employment. The x-ray taken on 9/16/41 reveals in the right lung, in the region of the fourth interspace, anterior, a cavity about 2 c.m. in diameter. This appears to be recent and probably has not been present as long as a year. It is our opinion that the x-ray findings are due to moderately advanced, pulmonary tuberculosis which is active.

"The report from the Institution refers to the fact that this employee was assigned to wards where it is likely patients with tuberculosis were hospitalized.

"It is the judgment of this committee that the presumption is strong that this illness grew out of the patient's employment."

With respect to claimant's present condition, there is a report which was received on October 23, 1946 from

the State Laboratory in Springfield, which reads as follows:

"Dr. J. L. Smith
1201 South Main Street
Jacksonville, Illinois

"On August 30th we received a specimen of sputum submitted by you from your patient, Mrs. Ada McNutt. This specimen was injected into a guinea pig at that time. To date this pig has remained well and healthy, and the autopsy on organs was normal. The result of the guinea pig inoculation is, therefore, negative for tuberculosis.

"Culture—No acid fast bacilli were found.

Very truly yours,
/s/ H. J. SHAUGHNESSY,
Chief, Division of Laboratories."

and Dr. Witten testified that from the said report claimant is now able to be gainfully employed.

From the record, the Court is of the opinion that claimant contracted tuberculosis as a result of her employment and had an ''occupational disease'' within the meaning of Section 6 of the Workmen's Occupational Diseases Act. The sole question remaining for determination is whether claimant is entitled to receive compensation under the provisions of this Act.

Liability would be determined either under Section 4 of the Workmen's Occupational Diseases Act, which provides for an election to come under the Act, or under Section 3. of the said Act. This court has decided that the State is liable under the provisions of Section 3 of the Workmen's Occupational Diseases Act (*Marjorie Wheeler* v. *State*, 12 C. C. R. 254), but that a claim to be compensable must be based on negligence by the State as defined in said Section 3. To establish negligence within the meaning of this section claimant must show respondent violated:

(1) A rule or rules of the Industrial Commission made pursuant to the Health and Safety Act, or
(2) Violated a Statute of this State intended for the protection of the health of employees.

Claimant argues that under Section 4 of the Occupational Diseases Act an employer may elect to provide and pay compensation according to the provisions of the Act by filing notice of such election with the Industrial Commission; that the Court of Claims supplants the Industrial Commission insofar as claims against the State are concerned; that it is impossible for the State to file a formal election under the Act, because there is no agency, other than the legislature, which has the authority to bind the State by an election. Claimant further argues that the State is either automatically under the Act or automatically excluded from the Act as far as payment of compensation to its employees for diseases arising out of State employment; that the legislature in passing the new Court of Claims Act in effect July, 1945, giving the court jurisdiction of claims for personal injuries or death arising out of and in the course of the employment of any State employees, the determination of which shall be in accordance with the substantive provisions of the Workmen's Occupational Diseases Act, was in itself an election by the State to pay and provide compensation under the Occupational Diseases Act. Paragraph D of Section 8 of the new Court of Claims Act is substantially the same as it was in the old Act except that it formerly only specified claims to be determined under the provisions of the Workmen's Compensation Act, whereas it now covers claims to be determined under the substantive provisions of both Acts. This court concluded that it had jurisdiction of claims arising under Section 3 of the Workmen's Occupational Diseases Act (Marjorie Wheeler v. State, supra), and the new Court of Claims Act merely confirmed this by express statutory enactment. To conclude that this was an election by the legislature for the State and to have the same effect as the

election by employers under Section 4 of the Workmen's Occupational Diseases Act, would be construing the Act by reading into it something never intended by the legislature. If the legislature intended to make an election, making employees of the State automatically under the Workmen's Occupational Diseases Act, it is reasonable to assume that it would have done so by amending the Workmen's Occupational Diseases Act by providing as it did in the Workmen's Compensation Act, Section 3, which reads— "The provisions of this Act hereinafter following shall apply automatically and without election to the State, county, city, town, township, incorporated village or school district, body politic or municipal corporation * * *" This court has interpreted that section to mean that the Act applied automatically and without election to the State.

To recover from the respondent under the Workmen's Occupational Diseases Act, claimant must show by the evidence that the State is charged with negligence as defined in Section 3 of the said Act.

From the record, this claimant has failed to do.

For the reasons stated, an award is denied.